UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ESTATE OF JOHN OLIVA,          :
                               :
          Plaintiff,           :    HONORABLE JOSEPH E. IRENAS
                               :    CIVIL ACTION NO. 01-2259 (JEI)
     v.                        :
                               :         **OPINION**
STATE OF NEW JERSEY, et al.,   :
                               :
          Defendants.          :


**APPEARANCES:**

WILLIAM H. BUCKMAN LAW FIRM
By:  William H. Buckman, Esq.
110 Marter Ave., Suite 209
Moorestown, New Jersey 08057
          Counsel for Plaintiff

LAW OFFICES OF ALAN L. ZEGAS
By: Edward J. Byrne, Esq.
552 Main Street
Chatham, New Jersey 07928
          Counsel for Defendant Waldron


**IRENAS**, Senior District Judge:

     This matter comes before the Court on two motions by the only

remaining Defendant in this case, Albert Waldron.  In his Motion

for Reconsideration, Waldron asks this Court to reconsider the

portion of its previous decision wherein the Court denied summary

judgment to Waldron on Plaintiff's retaliation claims pursuant to

42 U.S.C. § 1981, and New Jersey's Conscientious Employee

Protection Act ("CEPA"), N.J.S.A. 34:19-1 et. seq.  In his

"Supplemental Motion for Summary Judgment," Waldron asserts for the

first time that Plaintiff's CEPA claim is barred by the statute of

limitations.[1]  For the reasons stated herein, the Motion for Reconsideration will be denied in part, and dismissed as moot in part.  The Supplemental Motion for Summary Judgment will be granted.

## I.

The facts relevant to the previous Motion for Summary Judgment, and by logical extension, the instant motions, are recounted in this Court's opinion, *Estate of Oliva v. State of New Jersey, et al.,* 579 F. Supp. 2d 643 (D.N.J. 2008).

## II.

A motion for reconsideration may only be granted on the ground that (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) that vacating the Order is necessary to correct a clear error of law or manifest injustice.  *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995).

The Court applies the same summary judgment standard stated in its previous opinion, *Estate of Oliva*, 579 F. Supp. 2d at 663-64.

---

[1]  Waldron did not submit his own brief in support of the prior Motion for Summary Judgment.  He merely relied on the arguments raised by his co-defendants who were jointly represented by their own counsel.  Those defendants did not raise the statute of limitations defense.

2

**III.**

**A.**

Waldron's Supplemental Motion for Summary Judgment requires only a brief discussion before turning to the merits of the Motion for Reconsideration.

Waldron's alleged actions which form the basis of the retaliation claims took place in "April 2000."  The original complaint, naming Waldron as a Defendant, was filed on May 11, 2001.[2]  As CEPA's statute of limitations is one year, N.J.S.A. 34:19-5, Plaintiff's CEPA claim against Waldron is time-barred.

The Court rejects Plaintiff's argument that Waldron's conduct was part of a larger pattern of retaliation by the New Jersey State Police, and therefore the Court should look to the latest retaliatory act in the "pattern" of conduct.  To hold as such would be to ignore the Court's earlier conclusions, not challenged here, that Plaintiff could not sustain retaliation claims against any of the other defendants, and that there was no conspiracy among the defendants.

No reasonable factfinder could conclude that Waldron's alleged actions were taken in the one year preceding May 11, 2001.

---

[2]  The parties both acknowledge that the original complaint alleged retaliation generally, without pleading a CEPA violation specifically.  The CEPA claim was only specifically pled in the First Amended Complaint, filed on September 5, 2001.  Plaintiff asserts that the CEPA claim should relate back to the date of the original complaint.  Because relating the claim back would not change the result in this case, the Court assumes without deciding that the CEPA claim does relate back to May 11, 2001.

Accordingly, summary judgment will be granted to Waldron on the
CEPA claim.

### B.

In the Motion for Reconsideration, Waldron asserts two clear
errors of law.  First, as to the § 1981 retaliation claim, he
asserts that the Court misapplied *Burlington Northern & Santa Fe
Ry. Co. v. White,* 548 U.S. 53 (2006), and therefore erroneously
concluded that Oliva had suffered an adverse employment action.
Second, Waldron similarly asserts that Oliva did not suffer an
adverse employment action under CEPA.  In light of the Court's
statute of limitations ruling on the CEPA claim, only the first
argument requires discussion.

Waldron emphasizes that the unwarranted negative performance
evaluation, which this Court held to be an adverse employment
action, was removed from Oliva's file and replaced.  According to
Waldron, any potential harm or injury that could have resulted from
the negative performance evaluation was remedied by the withdrawal
of the negative evaluation and replacement with a positive one.
For this reason, Waldron asserts, the § 1981 retaliation claim
fails as a matter of law.

At issue is the interpretation of *Burlington Northern*, and the
application of the second of its two related holdings.  In
*Burlington Northern*, the Supreme Court defined the breadth of Title

4

VII's anti-retaliation provision,[3] concluding that (1) the provision is not limited to discriminatory actions that affect the terms and conditions of employment; and (2) the provision

> covers those (and only those) employer actions that would have been materially adverse to a reasonable employee . . . . In the present context, that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

548 U.S. at 57.[4]  Justice Breyer, writing for the eight justice majority, distilled the second issue: how harmful must the challenged action be to constitute retaliation?  *Id.* at 60, 61, 67.  The Court answered this question relying on the purpose of the anti-retaliation provision which "seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms."  *Id.* at 68 (internal quotation and citation omitted).  Thus, "employer actions that are likely to deter victims of discrimination from complaining" are harms that may be remedied by the statute, while "petty slights, minor annoyances, and simple lack of good manners" are not actionable because they "normally . . . will not create such deterrence."  *Id.* (internal quotation and citation omitted).  The Court further

---

[3] As noted in this Court's previous Opinion, and not challenged here, the same standard applies to retaliation claims under Title VII and § 1981.

[4] Notably, the Court explained that Title VII's anti-retaliation provision is broader than the anti-discrimination provision.  *Burlington Northern,* 548 U.S. at 61-64; 66 ("the statute [provides] broader protection for victims of retaliation than for those whom Title VII primarily seeks to protect, namely victims of race-based, ethnic-based, religion-based, or gender-based discrimination.")

emphasized that the challenged action must have an objectively deterrent effect, as determined by a reasonable employee under the particular circumstances of the case.  *Id.* at 68-69.

Applying this standard to the facts of *Burlington Northern*, the Court rejected the employer's argument that a "37-day suspension without pay lacked statutory significance because [the employer] ultimately reinstated White with backpay."  548 U.S. at 71-72. Emphasizing that the employee was forced to go more than a month without a paycheck, the Court concluded that "an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay."  *Id.* at 72-73.

In *Moore v. City of Philadelphia*, the Third Circuit applied the *Burlington Northern* standard to reverse a district court's grant of summary judgment to the employer.  461 F.3d 331 (3d Cir. 2006).  In articulating the standard, the Court explained,

> the Supreme Court has now clarified that where unlawful retaliation is claimed, the plaintiff need only show that an action is 'materially adverse' in that it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'

*Id.* at 347-48 (quoting *Burlington Northern*).  Applying that standard, the Third Circuit held,

> a reasonable jury could conclude that a lateral transfer from the district where a police officer had earned goodwill and built positive relations with the community over time is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.

*Id.* at 348.

6

Turning to the instant case, this Court stated in its summary judgment opinion:

> Once stationed at Buena Vista, Oliva told Defendant Waldron that he believed Waldron was racially profiling. Oliva refused to engage in such practices. According to Oliva, Waldron became upset and raised his voice. Then, a week later, Waldron issued a negative performance evaluation of Oliva. A reasonable factfinder could conclude that the evaluation was unwarranted because Sergeant Callen ordered the creation of a new evaluation that was more positive.
>
> Such evidence, viewed in the light most favorable to Plaintiff, could support a finding that a reasonable worker would be dissuaded from making a charge of discrimination. An unwarranted negative evaluation by one's supervisor could have a deterrent effect.[5]

*Estate of Oliva*, 579 F. Supp. 2d at 671.

Oliva's negative performance evaluation (viewed in the light most favorable to Plaintiff) is analogous to the suspension without pay in *Burlington Northern* and the lateral transfer in *Moore.* Because of Waldron's unwarranted negative evaluation, Oliva was faced with the choice of allowing an erroneous evaluation to remain in his personnel file or going over the head of his immediate supervisor to plead his case to the station sergeant.  It was only after Oliva effectively appealed Waldron's decision to Sergeant Callen (complete with a written letter and supporting documentation) that Callen *ordered* Waldron to withdraw and replace the negative evaluation.  In an atmosphere where Trooper Recruits like Oliva were low men on the

_____

[5]  This Court applied the standard articulated in *Burlington Northern* and applied in *Moore*.  *See Estate of Oliva,* 579 F. Supp. 2d at 668.  Waldron does not contend that this Court applied an incorrect standard, rather, he asserts that the Court misapplied the *Burlington Northern* standard to the facts of this case.

totem pole, and "acting more senior than you were" was not tolerated,[6] a reasonable factfinder could conclude that Oliva's new positive evaluation came at the expense of endangering an already tenuous (at best) relationship with Waldron, Oliva's immediate supervisor.

In *Burlington Northern* the deterrent effect of the temporary suspension without pay was found in the hardship caused by a temporary loss of income. In *Moore*, the deterrent effect of the lateral transfer was found in the loss of goodwill in the district. In this case, the deterrent effect of the negative evaluation lies in the steps to which Oliva had to resort in order to remedy the erroneous information. Under the circumstances of this case, it can hardly be said that having to take such measures was merely a minor annoyance; therefore summary judgment on the § 1981 retaliation claim was properly denied.[7]

Neither of the two cases upon which Waldron relies changes this

---

[6]   *Estate of Oliva*, 579 F. Supp. 2d at 653, n.17.

[7]   *See generally, Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008) ("*Burlington* . . . strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions."); *see also, Hare v. Potter*, 220 F.App'x 120, 128 (3d Cir. 2007)("Whether an action is materially adverse 'often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'")(quoting *Burlington Northern*).

conclusion.  In *Sykes v. Pennsylvania Police,*[8] the Third Circuit
affirmed summary judgment for the employer on a Title VII retaliation
claim based on the lower court's conclusion that the plaintiff-
appellant had failed to establish a causal connection between the
alleged retaliatory conduct and the purported protected activity.
2008 WL 901969 at *2.  The court went on to say, in a footnote, that
lower scores on a performance evaluation "are not by themselves
actionable under Title VII absent a showing . . . that they resulted
in 'a more tangible form of adverse action, such as ineligibility for
promotional opportunities.'" *Id.* at n.2 (quoting *Brown v. Snow*, 440
F.3d 1259, 1265 (11th Cir. 2006)).  As already discussed, the facts
of this case do present more than just a low score on a performance
evaluation.

Moreover, the case *Sykes* quotes-- *Snow*-- was decided before
*Burlington Northern*.[9]  In short, even if *Sykes* was not
distinguishable on its facts, the passage relied upon by Waldron is
dicta based on an out-dated legal standard.

*Morrison v. Carpenter Technology Corp.*,[10] also relied upon by

---

[8]   No. 07-1494, 2008 WL 901969 (3d Cir. April 4, 2008).  This
case is a two-page slip-copy opinion.

[9]   *Snow* applied the standard that *Burlington Northern*
rejected.  *See Snow*, 440 F.3d at 1266 (noting that the adverse
employment action standard is the same for both retaliation and
direct discrimination claims under Title VII); *cf. Moore*, 461 F.3d
at 341 (noting that the Supreme Court in *Burlington Northern*
disagreed with the Third Circuit's previous formulation of the
adverse employment action standard in retaliation cases, which was
the same standard applied in discrimination cases).

[10]   193 F.App'x 148 (3d Cir. 2006).

9

Waldron, is likewise distinguishable.  The court held that a
reasonable factfinder could not find plaintiff-appellant's
"corrective performance review" materially adverse because "the
record is devoid of any facts bearing upon the significance of the
single corrective performance review on his professional advancement
at [the company]."  193 F.App'x at 154.  As discussed above, the
record in this case does contain such facts.  A reasonable factfinder
could conclude that the steps Oliva took in order to remedy the
unwarranted negative evaluation could have a negative impact on his
advancement, insofar as those steps would likely negatively impact
his relationship with his immediate supervisor.  Accordingly, the
Motion for Reconsideration will be denied as to the § 1981
retaliation claim.

## IV.

        For the foregoing reasons, the Supplemental Motion for
Summary Judgment on the CEPA claim will be granted; the Motion for
Reconsideration will be denied as to the § 1981 retaliation claim,
and dismissed as moot as to the CEPA claim.  The net result of this
Court's ruling on these Motions and the prior Summary Judgment Motion
is to leave a single claim (§ 1981 retaliation) against the last
remaining Defendant (Waldron).  An appropriate order will be issued.


Date: December 18, 2008          ___s/ Joseph E. Irenas_____
                                 Joseph E. Irenas, S.U.S.D.J.



                                    10